IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-242-D

| | | |
|---|---|---|
| WANDA MITCHELL LASSITER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NORTH CAROLINA COMMUNITY | ) | |
| HEALTH CENTER ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

On May 29, 2018, Wanda Mitchell Lassiter ("Lassiter" or "plaintiff"), proceeding pro se, moved for leave to proceed in forma pauperis [D.E. 1]. On June 1, 2018, the court denied the motion [D.E. 4]. On July 3, 2018, Lassiter filed a complaint against North Carolina Community Health Center Association ("NCCHCA" or "defendant"), seeking relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq. [D.E. 5]. On August 29, 2018, NCCHCA moved to dismiss Lassiter's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [D.E. 15] and filed a memorandum in support [D.E. 16]. On December 14, 2018, Lassiter responded in opposition [D.E. 22]. As explained below, the court grants NCCHCA's motion to dismiss.

I.

On July 22, 2002, Lassiter joined NCCHCA as the Finance Director. See Ex. A [D.E. 16-1] 2. Lassiter is an African-American woman. See id. During 2012, Lassiter began to suspect that Ben Money ("Money"), the President and Chief Executive Officer of NCCHCA, "preferred to work with [people of] races other than his own." See Compl., Ex.1 [D.E. 5-1] 1. Money is also African-American. See id. Lassiter developed this impression from comments made by Money. For

example, Money stated that another African-American employee "seemed more comfortable with her [w]hite counterparts," and Lassiter inferred that Money felt the same way. Id. Additionally, Money said that Lassiter, as an African-American, had to "go above and beyond" in her job performance. Id.

In 2005, Lassiter's position was renamed "Director of Finance and Human Resources." Ex. A [D.E. 16-1] 2. In 2016, NCCHCA created a new position, Vice President ("VP") of Operations and Development. See id. Lassiter alleges that she "was already doing over half [of] the tasks associated with [the new position]." Id. Nevertheless, Money informed Lassiter that she needed to apply for the VP position, even though Lassiter alleges that NCCHCA promoted a white male employee to a new VP position directly. See id. In response, Lassiter asked Money if NCCHCA required her to apply for the new VP position because of her race. See id.; cf. Compl., Ex. 1 [D.E. 5-1] 1. Money "uncomfortably" answered no. Ex. A [D.E. 16-1] 2.

NCCHCA initially offered the VP position to an unnamed white woman. See Compl., Ex. 1 [D.E. 5-1] 1. When the woman did not accept the position, NCCHCA hired an African-American woman named Crystal Shanks ("Shanks") for the VP position. See id. Lassiter asked Money why she was not chosen for the VP position, and he responded that NCCHCA decided to bring in a "fresh face." Id.; Ex. A [D.E. 16-1] 2. Money's response shocked Lassiter in part because the VP position required an applicant to have an MBA and Shanks did not have one. See Compl., Ex. 1 [D.E. 5-1] 1; Ex. A [D.E. 16-1] 2.

Shanks is an African-American woman, but she has a lighter skin color than Lassiter. See Compl., Ex. 1 [D.E. 5-1] 1. Soon after NCCHCA hired Shanks, Lassiter and Shanks had difficulty working together. On May 4, 2017, Shanks made several comments during lunch that made Lassiter uncomfortable, including that Shanks thought her white husband was a "blessing." Id.; see Ex. A

2

[D.E. 16-1] 2. On May 5, 2017, Shanks yelled at Lassiter in Lassiter's office after a team meeting. See Compl., Ex. 1 [D.E. 5-1] 1; Ex. A [D.E. 16-1] 2. On May 8, 2017, Lassiter reported these conflicts to Money, specifically noting that her conversations with Shanks concerning the race of Shanks's husband had made her uncomfortable. See Compl., Ex. 1 [D.E. 5-1] 1. Thereafter, during a meeting with a human resources representative and Money, Shanks apologized to Lassiter. See id. On June 12, 2017, Lassiter filed a written complaint with Money. See Ex. 1 [D.E. 16-1] 3. On June 13, 2017, NCCHCA terminated Lassiter's employment. See id. at 2–3; Compl. [D.E. 5] 6.

On or about December 9, 2017, Lassiter filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging Title VII violations. See Ex. 1 [D.E. 16-1]. Specifically, Lassiter alleged that NCCHCA failed to promote her to the new VP position and terminated her employment due to her skin color and terminated her employment in retaliation for protected activity. See id. On March 2, 2018, Lassiter received a Notice of Right to Sue from the EEOC. See Compl. [D.E. 5] 5.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708

3

F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 677–83; Coleman, 626 F.3d at 190; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

Title VII of the Civil Rights Act of 1964 requires a person to exhaust her administrative remedies by filing a charge with the EEOC concerning the alleged discrimination before filing suit in federal court. See 42 U.S.C. § 2000e-5(e)(1); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). A person must do so within 180 days of each alleged violation. See 42 U.S.C. § 2000e-5(e)(1); Jones, 551 F.3d at 300. A person also must file suit in federal court within 90 days of receiving a Notice of Right to Sue from the EEOC. See 42 U.S.C. § 2000e-5(f)(1).

As for NCCHCA's motion to dismiss pursuant to Rule 12(b)(6), NCCHCA argues that Lassiter's action is time barred because she failed to file her complaint within 90 days of receiving a Notice of Right to Sue from the EEOC. See [D.E. 16] 4–6. On March 2, 2018, Lassiter received the EEOC's Notice of Right to Sue. See Compl. [D.E. 5] 5. On May 29, 2018, Lassiter moved for

leave to proceed in forma pauperis ("IFP") and filed a proposed complaint. See [D.E. 1]; [D.E. 1-2]. Lassiter's IFP application tolled the 90-day statute of limitations until the court ruled on it. See, e.g., Truitt v. Cty. of Wayne, 148 F.3d 644, 647–48 (6th Cir. 1998); Williams-Guice v. Bd. of Educ., 45 F.3d 161, 164–65 (7th Cir. 1995); Jarrett v. U.S. Sprint Commc'ns Co., 22 F.3d 256, 259 (10th Cir. 1994).

On June 1, 2018, this court denied Lassiter's IFP application [D.E. 4]. The 90-day clock, which had two days remaining, resumed running. See Truitt, 148 F.3d at 647–48; Williams-Guice, 45 F.3d at 164–65. Lassiter failed to file her complaint until July 3, 2018. Thus, Lassiter failed to meet the 90-day deadline. Although the 90-day deadline is not jurisdictional,[1] nothing in the record warrants equitable tolling. See, e.g., Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95–96 (1990); Hallstrom v. Tillamook Cty., 493 U.S. 20, 27 (1989); Chao v. Va. Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002); Harvey v. City of New Bern Police Dep't, 813 F.2d 652, 654 (4th Cir. 1987). Accordingly, Lassiter's Title VII claims are untimely, and the court grants NCCHCA's motion to dismiss. See Jones v. Se. Reg'l Med. Ctr., No. 7:18-CV-28-D, 2019 WL 97036, at *2 (E.D.N.C. Jan. 2, 2019) (unpublished).

III.

In sum, the court GRANTS NCCHCA's motion to dismiss [D.E. 15] and DISMISSES the complaint without prejudice. The clerk shall close the case.

SO ORDERED. This 15 day of January 2019.

JAMES C. DEVER III
United States District Judge

---

[1] See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Laber v. Harvey, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (en banc).

5